IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

TARI L. E.,

                         Plaintiff,

              v.                                    Civil Action No.
                                                    1:21-CV-1283 (DEP)


COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.

_____

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF

OFFICE OF RUSSELL A.                      RUSSELL A. SCHINDLER, ESQ.
SCHINDLER
245 Wall Street
Kingston, NY 12401

FOR DEFENDANT

SOCIAL SECURITY ADMIN.                    GEOFFREY PETERS, ESQ.
6401 Security Boulevard
Baltimore, MD 21235


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


DECISION AND ORDER[1]

_____

[1]      This matter is before me based upon consent of the parties, pursuant to 28
U.S.C. § 636(c).

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. § 405(g), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that she was not disabled, and, accordingly, is ineligible for the disability insurance ("DIB") benefits for which she has applied.  For the reasons set forth below, I conclude that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence.

I.      BACKGROUND

Plaintiff was born in December of 1959, and is currently sixty-three years of age.  She was fifty-four years old on April 15, 2014, the date on which she alleges she became disabled, and fifty-seven years old as of December 31, 2016, when she was last insured for disability benefits under Title II of the Social Security Act ("DLI").  Plaintiff stands five feet five inches in height, and weighed approximately one hundred and fifty-four pounds during the relevant time period.  Plaintiff testified at the administrative hearing that, during the relevant period, she first lived in an apartment by herself in New York City, but subsequently moved into her father's house in Woodstock, New York in 2016 after she was evicted from her apartment.

In terms of education, plaintiff graduated from high school and completed two years of college, but did not receive a college degree.

2

Plaintiff reports that she most recently worked as a hostess and manager at a restaurant, but was fired in 2014 because she cried too frequently at work.  She has also worked in the past variously as a bartender, waitress, receptionist and printer at a printing house, an administrative assistant, and an assistant at a hair salon.  Relevant to her claim, plaintiff reports that she was present during a shooting at her place of employment in 1990, causing her significant posttraumatic stress.

Plaintiff alleges that she suffers primarily from mental impairments, including posttraumatic stress disorder ("PTSD"), depression, anxiety, and memory issues.  During the relevant period, plaintiff treated for her impairments with Dr. Marianne Gillow.  She received further treatment after her DLI from sources at the Institute for Family Health Center for Counseling and Kingston Family Practice.

Plaintiff testified at the administrative hearing that she suffers from debilitating mental symptoms which prevent her from functioning.  She reported that she is unable to sleep, avoids thinking too much about anything because it causes her to cry, and does not like to leave the house because she is scared of everything.  She also reported experiencing suicidal thoughts.  Plaintiff acknowledged that near the end of the relevant period, she began taking care of her father and was able to cook and do

some cleaning for him.  She acknowledged that she is able to follow instructions, but noted that everything is overwhelming for her to the point where she simply does not do anything.  Her friend assisted her in preparing her disability application because she was unable to focus on completing the paperwork.

II.     PROCEDURAL HISTORY

     A.     Proceedings Before the Agency

As is relevant to the current appeal, Plaintiff applied for DIB payments under Title II of the Social Security Act on August 30, 2019.  In support of her application, she claimed to be disabled due to PTSD, depression, anxiety, memory issues, vertigo, chronic heartburn, and night terrors.

A hearing was conducted on January 6, 2021, by Administrative Law Judge ("ALJ") Vincent M. Cascio to address plaintiff's application for benefits.  ALJ Cascio thereafter issued an unfavorable decision on February 3, 2021.  That opinion became a final determination of the agency on September 28, 2021, when the Social Security Appeals Council ("Appeals Council") denied plaintiff's request for review of the ALJ's decision.

     B.     The ALJ's Decision

In his decision, ALJ Cascio applied the familiar, five-step sequential

test for determining disability.  At step one, he found that plaintiff had not

engaged in substantial gainful activity during the relevant period.

Proceeding to step two, ALJ Cascio found that, during the relevant time,

plaintiff suffered from medically determinable impairments, including a

depressive disorder without psychotic features, PTSD, attention deficit

disorder ("ADD"), and obsessive compulsive disorder ("OCD").  He found,

however, that none of those impairments, either individually or in

combination, failed to significantly limit her ability to perform basic work-

related activities for twelve consecutive months during the relevant period,

and therefore concluded that plaintiff was not disabled from her alleged

onset date of April 15, 2014, through her DLI of December 31, 2016.

    C.   <u>This Action</u>

    Plaintiff commenced this action on December 1, 2021.[2]  In support of

her challenge to the ALJ's determination, plaintiff argues that the ALJ erred

in assessing the opinion evidence from plaintiff's various mental health

treating sources.  Dkt. No. 7.  Plaintiff contends that, as a consequence of

those errors in assessing the available opinion evidence, the ALJ not only

---

[2]    This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in the recently enacted Supplemental Security Rules and General Order No. 18.  Under those provisions, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

erroneously failed to find that plaintiff has a severe mental impairment, but also failed to properly find that her impairments meet the requirements of Listing 12.04 of the Commissioner's Listings of presumptively disabling impairments, 20 C.F.R., Pt. 404, Subpt. P, App. 1.  *Id.*

Oral argument was conducted in this matter, by telephone, on January 18, 2023, at which time decision was reserved.

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Where there is reasonable doubt as to whether the ALJ applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  If, however, the correct legal standards have been applied, and the ALJ's findings are

6

supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

7

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or

her physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If it is determined that it does, then as a final matter, the agency must examine whether the claimant can do any other work. *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work. *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC,

9

age, education, past work experience, and transferability of skills.  *Ferraris*,

728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

    C.   <u>Analysis</u>

    In this case, the ALJ found that plaintiff did not have an impairment or

combination of impairments that significantly limited her ability to perform

basic work-related activities for twelve consecutive months during the

relevant period.  Administrative Transcript ("AT") at 20-21.[3]  In reaching this

conclusion, the ALJ noted that plaintiff did not receive any psychiatric

treatment during the relevant period until consulting with Dr. Marianne

Gillow, a psychiatrist, in June of 2016, and that she had only one visit with

Dr. Gillow before the end of the year due to an inability to afford more visits

and because she moved out of the area.  AT 22.  As the ALJ

acknowledged, plaintiff did engage in subsequent email correspondence

with Dr. Gillow in follow-up to continue her medication management for a

short period of time in later 2016.  *Id.*  The ALJ also acknowledged that

plaintiff underwent further treatment for her relevant impairments that is

documented in the record, but appears to have disregarded that evidence

primarily because it was from after her DLI.  AT 22-24.  Lastly, the ALJ

---

[3]    The administrative transcript is found at Dkt. No. 6, and will be referred to
throughout this decision as "AT __."

cited to plaintiff's reported ability to care for her father to support most of his specific findings related to the persuasiveness of the opinion evidence and of plaintiff's subjective reports.  AT 22-24.

In the context of step two of the sequential test for determining disability, "[a] 'severe' impairment is one that significantly limits an individual's physical or mental ability to do basic work activities.'" *Meadors v. Astrue*, 370 F. App'x 179, 182 (2d Cir. 2010) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).  A claimant's burden at step two is not stringent; it is intended to primarily to screen out only de minimis claims.  *Patrick J. v. Comm'r of Soc. Sec.*, 17-CV-1377, 2019 WL 917963, at *4 (N.D.N.Y. Feb. 22, 2019) (Baxter, M.J.).  As with every other part of the ALJ's decision, an ALJ's findings regarding whether impairments are severe should be upheld where there is substantial evidence in the record to support the step two finding.  *Meadors*, 370 F. App'x at 182.

The bases for the ALJ's finding that plaintiff's mental impairments are not severe at step two are essentially the facts that (1) there was very little documentary evidence of treatment during the period prior to plaintiff's DLI, and (2) she was able to care for her father.  As to the first of these reasons, I find that it is insufficient to provide substantial evidence to support the ALJ's conclusion, and that the ALJ has failed to apply the proper legal

11

standard when making that assessment.  As this court has previously

recognized, "the Second Circuit 'has observed, repeatedly, that evidence

bearing upon an applicant's condition subsequent to the date up to which

the earning requirement . . . was last met is pertinent evidence in that it

may disclose the severity and continuity of impairments existing before the

earning requirement date.'"  *Guarino v. Comm'r of Soc. Sec.*, 07-CV-1252,

2010 WL 199721, at \*7 (N.D.N.Y. Jan. 14, 2010) (Bianchini, M.J.; Sharpe,

J.) (quoting *Lisa v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 40,

44 (2d Cir. 1991)) (internal quotation marks omitted); *see also Karen S. v.

Comm'r of Soc. Sec.*, 20-CV-0960, 2022 WL 462086, at \*9 (N.D.N.Y. Feb.

15, 2022) (Hummel, M.J.) (noting that "medical evidence obtained after a

plaintiff's DLI can be used to show that a plaintiff was disabled prior to that

date as long as it pertains to already-existing impairments") (internal marks

and alterations omitted).  Accordingly, the fact that much of the plaintiff's

treatment evidence, as well as the record opinion evidence, post-dates the

plaintiff's DLI is not the end of the analysis the ALJ was required to

perform.  Rather, the ALJ should have assessed whether that evidence

could be considered to represent a continuation of symptoms plaintiff was

already experiencing during the relevant period.  There is no indication that

the ALJ conducted such an examination of the evidence.  The absence of

such an analysis represents a procedural error.

A review of the evidence suggests that this failure to conduct an analysis of the extent to which the post-2016 evidence represented plaintiff's functioning during the relevant period was not harmless. Plaintiff's testimony and reports to both the agency and treatment providers consistently indicate that she has been experiencing mental health symptoms for many years, dating back to at least the traumatic 1990 workplace incident. *See, e.g.*, AT 64-65, 386-88. She further reported that she was fired from her most recent job in 2014 for crying too frequently at work, as a result of her inability to cope with her mother's recent death and other mental health symptoms. AT 55. In the treatment record from the one appointment plaintiff did have with psychiatrist Dr. Gillow in June of 2016, it is noted that plaintiff reported experiencing high anxiety, fear, an unwillingness to leave her house, and that she "can't do anything." AT 485. Plaintiff recounted that she gives up easily, that she has been "in a fog" for two years, that she has not been able to look for work in two years, and that she used to take Celexa, which stopped her from crying. AT 485. She stated that her activities consist of staying home, watching television, sleeping, and visiting her sister, although she stated she isolates and can go weeks without leaving her apartment. AT 486. She further stated she

13

gets paralyzed by doing paperwork, has no energy, ambition or drive, is indecisive, and "flips out" and get very scared if she has to think about life. AT 486.  During her June 2016 examination of the plaintiff, Dr. Gillow observed that she was anxious, verbal, and dysphoric when discussing her traumatic experiences, and that she reported feelings of hopelessness and helplessness, distractibility, and occasional blacking out.  AT 497.  Dr. Gillow diagnosed plaintiff as suffering from major depression categorized as recurrent and severe, an obsessive disorder, and possible ADD.  AT 497.  She prescribed Prozac and Ritalin.  AT 497.

Dr. Gillow then followed up with plaintiff numerous times by email to adjust her medications, including increasing her dose of Prozac, adding lamotrigine, and changing Ritalin to Adderall.  AT 502-03.  Plaintiff reported in July of 2016 that she was planning to increase her Prozac dose soon and that lamotrigine "seem[ed] to be working" as she was not experiencing any feelings of hostility.  AT 466.  In response, Dr. Gillow stated that "this sounds like pretty decent progress for a short period of time," and requested that plaintiff check in with her after she had been taking the increased dose of Prozac for a week.  AT 466.  By September of 2016, when plaintiff was in preparations to move in with her father, Dr. Gillow further recommended increasing her dose of lamotrigine.  AT 464.

The ALJ appears to have interpreted Dr. Gillow's statement that plaintiff had made "pretty decent progress" in a "short period of time" as proof that plaintiff's mental impairments were easily controlled with treatment and medication, or, at the very least, that they would not have caused limitations during the relevant period had she been receiving treatment.  AT 24.  However, that conclusion is belied by the fact that the subsequent treatment notes from 2017 and beyond indicate that plaintiff continued to experience symptoms while taking medications and attending therapy.  In a treatment note authored by PMHNP Trissa Adams from September of 2017, nine months after the DLI, plaintiff reported that she had been trying to cope with her mental health symptoms on her own, but stated, "I give up, I need help."  AT 382.  She reported that she was very emotional, that everything made her cry, that she had been depressed for the "past couple of years," and that her prior trial of Prozac had not been helpful, although it was not clear how effective lamotrigine had been.  AT 382.  NP Adams observed that plaintiff had an anxious, depressed, and irritable mood, and assessed severe recurrent major depressive disorder, PTSD, and anxiety, among other things.  AT 384.  It is noteworthy that, in 2017, plaintiff reported many of the same triggering events and mental health symptoms as she had reported to Dr. Gillow in 2016.  AT 387-88.

Subsequent treatment notes indicate that plaintiff continued to suffer from symptoms despite treatment with medication and therapy, although she did experience some improvement.  For example, in October of 2017, she was observed to have an angry, anxious, and depressed mood.  AT 375.  She did report some diminishment of her mood and anxiety symptoms in later October of 2017, but stated that there was still "room for improvement."  AT 371.  She continued to be observed to generally display an anxious and depressed mood in therapy sessions through the end of 2017.  AT 366.  The evidence therefore sufficiently suggests both that plaintiff's mental health symptoms existed during the relevant period and that they were not wholly controlled with medication.  I therefore find that it was error for the ALJ to not engage in a thoughtful and thorough consideration of whether the evidence from after the plaintiff's DLI was germane to the assessment of her symptoms and functioning during the relevant period for the purposes of assessing whether her impairments were severe.

As to the ALJ's second reason for finding plaintiff's mental impairments to be nonsevere – that she was able to act as caretaker for her father beginning at the end of 2016 – I find that also to be an insufficient basis to support his finding in light of his failure to appropriately

consider all the potentially relevant evidence.  The treatment records from

2017 and beyond reflect that, according to the plaintiff, living with her father

exacerbated her mental health symptoms, something which the ALJ

seemingly did not consider.  AT 386.  The ALJ also did not examine what

caring for her father actually entailed, nor did he explain how plaintiff's

ability to cook for her father, perform some chores, help him walk around

the house, and take him to doctor's appointments proved that she had no

work-related limitations as a result of her mental impairments.  AT 225.

Further, the reliance on her ability to care in some capacity for her father

appears to conflate the step two severity analysis with the assessment of

work-related functioning or disability that is to be made at a later step of the

sequential evaluation.  *See Durodoye v. Comm'r of Soc. Sec.*, 16-CV-1457,

2018 WL 1444212, at *6 (N.D.N.Y. Mar. 20, 2018) (Hummel, M.J.) (finding

remand warranted where it was unclear whether the ALJ applied the

correct standard at step two).

　　　For the reasons stated above, and upon consideration of all of the

evidence, I conclude that the ALJ's finding at step two is the product of a

failure to appropriately review all the evidence before him, thereby

precluding meaningful review of whether that finding is supported by

substantial evidence.  I therefore find that this matter should be remanded

for further consideration.  Because this was a denial at step two of the sequential evaluation, I decline to make any findings regarding the merits of plaintiff's listings argument or claim that she has specific functional limitations like those outlined in the rejected opinion evidence.  Such findings should be made in the first instance by the assigned ALJ on remand should he or she conclude, after an appropriate consideration of the evidence, that plaintiff's mental impairments constitute severe impairments under the regulations.

IV.   SUMMARY AND ORDER

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I find that the determination did not result from the application of proper legal principles and is not supported by substantial evidence.  Accordingly, it is hereby

ORDERED that plaintiff's motion for judgment on the pleadings (Dkt. No. 7) be GRANTED, defendant's motion for judgment on the pleadings (Dkt. No. 10) be DENIED, the Commissioner's decision be VACATED, and this matter remanded for further proceedings consistent with this decision and order, without a directed finding of disability, pursuant to sentence four of 42 U.S.C. § 405(g); and it is further respectfully

ORDERED that the clerk enter judgment consistent with this opinion.

Dated:      January 24, 2023
            Syracuse, NY                    _____
                                            DAVID E. PEEBLES
                                            U.S. Magistrate Judge